IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
COAL RIVER MOUNTAIN WATCH,
INC., and SIERRA CLUB,**

**Plaintiffs,**

**v.**                                    CIVIL ACTION NO. 3:10-cv-00847

**CATENARY COAL COMPANY, LLC,
and HOBET MINING, LLC,**

**Defendants.**

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

In support of their Motion to Dismiss, Defendants submit the following memorandum of law.

## I. INTRODUCTION

Plaintiffs have failed to demonstrate that the Court may exercise subject matter jurisdiction over this action under the citizen suit provisions of the Clean Water Act, 33 U.S.C. § 1365(a) ("CWA") and the federal Surface Mining Control and Reclamation Act § 1270(a) ("SMCRA"). As to Plaintiffs' claims regarding violations of Hobet's National Pollutant Discharge Elimination System ("NPDES") Permits, the State of West Virginia, acting through its Department of Environmental Protection ("WVDEP"), commenced a civil action in the Circuit Court of Boone County in 2007 and entered a settlement and consent order in September 2008. The state civil action embraces the same NPDES permits, pollutants, and outlets at issue here. This Court has already found that action to be moot and denied further injunctive relief. *OVEC*

*v. Hobet Mining,* 2008 WL 5377799, *6 -10 (S.D. W.Va. 2008). Three months later Plaintiffs entered a consent decree resolving their remaining claims for civil penalties. *OVEC v. Hobet Mining,* 3:08-cv-0088, Doc. 54 (March 19, 2009). They are barred by *res judicata* from now claiming otherwise. Accordingly, this Court does not have subject matter jurisdiction, and the case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Regarding Catenary's NPDES permits, Plaintiffs claim that Catenary discharges selenium into waters of the United States "in violation" of Section 301 of the CWA, 33 U.S.C. § 1311, and the conditions and limitations of the three permits issued to Catenary pursuant to Section 402 of the Act. Additionally, Plaintiffs claim Catenary is discharging unlawful quantities of selenium into the waters adjacent to its mine sites "in violation" of the performance standards under SMCRA and the terms and conditions of its state surface mining permits. Complaint at ¶ 3.

This Court should dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because the permit "limits" about which Plaintiffs complain have been stayed by orders from the West Virginia Environmental Quality Board ("EQB")[1] and Kanawha County Circuit Court. Accordingly, Catenary is not "in violation" of any of its permit limits. For this same reason, the case is not ripe for adjudication. Additionally, the WVDEP is currently pursuing an enforcement action against Catenary related to the same two NPDES Permits that are the subject Plaintiffs' suit in the Circuit Court of Boone County. The current suit is barred by the CWA's diligent prosecution bar because Plaintiffs cannot demonstrate that the WVDEP has failed to diligently prosecute the violations that form the basis of their claims.

---

[1] The EQB is the appellate board designated to hear the appeal of a WV/NPDES permit modification requests. *See* W. Va. Code § 22-11-21

## II. STATEMENT OF FACTS

**A.     Hobet Permits**

Hobet operates a large scale surface coal mine in Boone and Lincoln Counties, to the east of U.S. Route 119 near Madison, West Virginia.  At issue in the present case are four NPDES permits issued to Hobet for the operation of its surface mines: WV0099392, WV1016776, WV1020889 and WV1021028.  Each permit contains effluent limitations that control pollutants discharged in surface run-off from the mine sites, including discharges of selenium.

As this Court previously noted, Hobet has been subject to multiple citizen suits before this Court. *Ohio Valley Environmental Coalition, Inc. v. Apogee Coal Company, LLC* and *Hobet Mining, LLC* ("*Apogee*") (3:07-cv-0413), filed on June 29, 2007; *Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC* ("*Hobet I*") (3:08-cv-0088), filed on February 7, 2008; *Ohio Valley Environmental Coalition, Inc. v.U.S. Army Corps of Engineers,* 3:08-cv-0979, filed August 7, 2008; *United States v. Patriot Coal Corporation,* filed February 5, 2009, (2:09-cv-0099) and *OVEC v. Hobet,* ("*Hobet II*"), filed October 23, 2009 (3:09-cv-1167). *See, Hobet II,* Doc. 49, at 6-11.  *Hobet I* was the second citizen suit on the same four permits that are the subject of this action, in which the Plaintiffs alleged that the WVDEP's civil action in the Boone County circuit court was not a diligent prosecution sufficient to preclude their claims.

Subsequent to the initiation of *Hobet I,* DEP and Hobet entered into consent decree on September 5, 2008, which was approved by the Boone County Circuit Court.  The Consent Decree provided for stipulated penalties for future violations, required Hobet to undertake supplemental environmental projects, and required compliance with final selenium limits by April 5, 2010.  By its terms, the Consent Decree could not terminate except by order of

the Court, provided that Hobet achieved compliance with all requirements of the Decree and paid all civil penalties required under the Decree. *See* 9/5/08 Consent Decree, p. 16, §XV (attached as Exhibit 1).[2] This Court found that, although DEP's enforcement efforts were not diligent when Plaintiffs filed suit, the settlement and consent order entered in the interim mooted the case except for one claim related to civil penalties for a six month period between March and September 2008. *Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC*, 2008 WL 5377799, *6 -10 (S.D.W.Va. 2008). The narrow civil penalty claim was resolved by a consent decree entered between the parties on March 19, 2009. *Hobet II,* Doc. 54. As of the date of this filing, the Circuit Court of Boone County has not entered an order terminating jurisdiction over the Consent Decree.

**B.     Catenary Permits**

Catenary holds NPDES Permits WV0096962 and WV1014684, which regulate discharges of pollutants, including selenium, in waters from its surface mines in Boone and Kanawha Counties. On April 5 2007, WVDEP issued industry-wide compliance schedules with the date for compliance with final effluent limits for selenium almost uniformly set to April 6, 2010. Because no surface coal mining operation has yet consistently met a final effluent limit of $4.7\mu/gl$, Catenary sought to extend the schedule for achieving compliance. It did so by submitting applications to DEP prior to the April 5, 2010 deadline and requested a July 1, 2012 deadline as authorized by the West Virginia Legislature in W.Va. Code § 22-11-6 (2009).

WVDEP issued a public notice of its intent to grant Catenary's modification request. Although West Virginia's NPDES program is approved by the EPA, the federal agency

---

[2] The Circuit Court of Boone County subsequently modified the consent decree on December 10, 2009 to add two more NPDES permits to the settlement and consent order. *See WVDEP v. Hobet*, Civil Action No. 07-C-3 (Dec. 10, 2009)(Thompson). Attached as Exhibit 2.

retains the opportunity to review proposed NPDES permits and to provide comments and objections.[3]  WVDEP could not grant Catenary's modification requests because EPA sent WVDEP letters objecting to the proposed modifications.[4]  After EPA objected, Catenary filed an appeal of DEP's failure to render a prompt final decision on its modification requests with the EQB in March 2010.  Catenary also applied for and was granted stays of the final limits by the EQB and the Kanawha County Circuit Court.  *See* Order Granting Appellant's Motion for Stay, *Catenary Coal Co. v. WVDEP*, Appeal No. 10-MISC-142 (April 2, 2010)(attached as Exhibit 3); *Catenary Coal Co. and Apogee Coal Co. v. WVDEP*, Appeal No. 10-14-EQB (March 31, 2010)(attached as Exhibit 4).  Those orders stayed the final effluent limits from taking effect until Catenary had the opportunity to present its appeals to the EQB, now scheduled for September 13, 2010.

On April 23, 2010, DEP filed a civil enforcement action against Catenary in the Circuit Court of Boone County for alleged violations related to discharges under NPDES Permits WV0096920 and WV0093751.   On June 11, 2010—a week prior to the filing of Plaintiffs' action—DEP amended its complaint to include two additional NPDES Permits WV0096962 and WV1014684.  No scheduling order or discovery has commenced in the case.  Pending before the circuit court, however, is Catenary's motion to join the Plaintiffs' in the state action (attached as Exhibit 5).  Plaintiffs have opposed joinder. *See* Exhibit 6.

### III. ARGUMENT

**A.      Claim Preclusion, or *Res Judicata*, Precludes Plaintiffs from Seeking Injunctive Relief or Civil Penalties for Violations Associated with Hobet's NPDES Permits**

---

[3] 33 U.S.C. § 1342(d)(1).
[4] *See* 33 U.S.C. §1342(d)(2).
\* The Consent Decree case subsequently awarded by an Order entered December 5, 2009 that added two additional permits under the same term and conditions as the original Order (citation Hobet I case 6th order)

Plaintiffs' current claims are precluded by this Court's prior finding that WVDEP's own enforcement action rendered it unlikely that Hobet's violations would continue. "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Traveling Men's Assn.*, 283 U.S. 522, 525 (1931). This public policy is embodied in the traditional doctrines of *res judicata* and collateral estoppel. The principle of "*res judicata*" comprises two doctrines concerning the preclusive effect of prior litigation: claim preclusion (sometimes known as "true" *res judicata*) and issue preclusion (sometimes known as collateral estoppel). Wright & Miller, Fed. Prac. & Procedure, § 4402.

The classic distinction is this:  under "*res judicata*" or "claim preclusion," a final judgment on the merits of an action precludes the parties or those so situated as to be aligned with them from relitigating issues that were or could have been raised in the prior action.  Under collateral estoppel or "issue preclusion," once a court actually decides an issue of fact or law necessary to its judgment, the decision operates to preclude relitigation of the same issue in a different cause of action between the same parties. *Kremer v. Chemical Construction Corp.*, 102 S.Ct. 1883, 1889, n.6, 456 U.S. 461 (1982).  To establish *res judicata* or claim preclusion, a party must establish: "(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *See OVEC v. Aracoma*, 556 F.3d 177, 210 (4th Cir. 2009) citing *Aliff v. Joy Mfg. Co.,* 914 F.2d 39, 42 (4th Cir.1990).

"A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (emphasis supplied).  Thus, a

judgment on the merits includes not merely claims fully litigated, but claims which could have been offered in the prior litigation. *Pueschel v. United States,* 369 F.3d 345, 355-356 (4th Cir. 2004).

In the present case, Plaintiffs bring CWA and SMCRA citizen claims against Hobet related to alleged violations of the terms of NPDES Permits WV0099392, WV1016776, WV1020889, and WV1021028, requesting both civil penalties and injunctive relief. These are the same claims and the same permits that were the subject of *Hobet I.* In *Hobet I,* Plaintiffs acknowledged the State's parallel enforcement action in Boone County but argued that WVDEP's delays in prosecuting the action indicated that it was not calculated to lead to compliance and was, therefore, non-diligent. After Plaintiffs filed *Hobet I,* the permits were the subject of a mandatory consent order with WVDEP entered in Boone County Circuit Court.

This Court concluded that, although WVDEP's prosecution was not diligent prior the the filing of Plaintiffs' suit, the entry of the consent decree mooted Plaintiffs' action because there was no "realistic prospect that violations alleged in [plaintiffs'] complaint will continue notwithstanding the consent decree." *See Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC,* 2008 WL 5377799, *7 (S.D.W.Va. 2008). Accordingly, the Court found the State's enforcement efforts via the Settlement and Consent Order rendered moot Plaintiffs' claims for injunctive relief and for civil penalties through March 31, 2008. Plaintiffs' claims for civil penalties after March 31, 2008 were addressed as part of *Hobet I* through the consent decree that was subsequently entered by the Court. *See Hobet I,* 3:08-cv-00088, Consent Decree, Doc. 54 (3/19/09).

Plaintiffs acknowledge WVDEP's enforcement action and settlement but argue that it is not a "diligent prosecution" sufficient to preclude their suit because it does not seek to

require compliance, and there remains a realistic prospect of future violations.   Complaint, ¶ 8. This Court, however, has already considered the issue of whether the entry of the September 2008 consent order, was capable of requiring compliance.  In its July 12, 2010 decision in *Hobet II*, the Court reaffirmed that the 2008 consent decree from *Hobet I* eliminated the realistic prospect of continued violations on the four permits it covered.  *See Hobet II*, Case 3:09-cv-1167, Doc. 49, p. 31, n. 11 (July 12, 2010)("unlike the 2008 consent order, the modified consent decree does not eliminate the realistic prospect of continued violations…." (emphasis added). According to the Court, the distinguishing factors in the 2008 consent decree that made it capable of passing the "realistic prospect" test were the inclusion of significant stipulated penalties and the provision for specific supplemental environmental projects. *Id.*, p. 32.

33  U.S.C.  §  1365(b)(1)(B) precludes citizen suits where the "State has commenced and is diligently prosecuting" the same claims.  If a CWA enforcement action is "capable of requiring compliance with the Act," the prosecution will be considered diligent. *Piney Run Pres. Ass'n v. County Cmm'rs of Carroll County Md.*, 523 F. 3d 453, 459 (4th Cir. 2008).  Because the September 2008 consent decree is still in effect and provides for stipulated penalties for future violations, WVDEP's enforcement action is ongoing.  The salient issue in determining whether WVDEP's ongoing Boone County action constitutes a diligent prosecution is whether it is capable of requiring compliance.  That question has previously been decided by this Court in the affirmative.  Given this Court's prior finding that the WVDEP's parallel enforcement action relating to the same permits is capable of requiring compliance, Plaintiffs cannot relitigate the issue again between the same parties as part of identical claims. Accordingly, Plaintiffs current claims against Hobet are barred by claim preclusion and should be dismissed.

B. **The Plaintiffs' CWA Claims Against Catenary Should Be Dismissed Under Rules 12(b)(1) And 12(b)(6).**

The Complaint fails to clear two distinct and essential hurdles. First, the Complaint must be dismissed because this Court lacks subject matter jurisdiction to hear the Plaintiffs' claims under Rule 12(b)(1). Second, the Complaint fails to meet the pleading standards of Rule 12(b)(6), which require the Plaintiffs to sufficiently allege facts to support each element of each alleged violation. Because the Plaintiffs' Complaint provides none of this information, it must be dismissed.

1. **Plaintiffs' Claims Against Catenary Should Be Dismissed Under Rule 12(b)(1) Because Catenary Is Not "In Violation" Of Its Permit Limits For Selenium.**

Plaintiffs bringing a citizen suit under Section 505 of the CWA or Section 520 of SMCRA *must* demonstrate the existence of *ongoing violations*. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987). This Court does not have jurisdiction in this case because there is no genuine issue of material fact as to whether Catenary is committing ongoing violations.

Plaintiffs' Complaint asserts that Catenary is "in violation" of the final water quality-based effluent limits ("WQBELs") for selenium for Permit Nos. Permits WV0096962 and WV1014684. Complaint at ¶¶ 2, 14, 15, and 16. These assertions are false. Catenary cannot be held to be "in violation" of the final WQBELs for these permits because, pursuant to Stay Orders from the EQB and Kanawha County Circuit Court, the WQBELs for these permits are not yet final. *See* Exhibits 3 and 4 (Stay Orders). The orders stayed those parts of Catenary's permits and/or compliance schedules that would otherwise impose final selenium effluent limits

beginning on April 5, 2010 until further order or final order of the WVEQB on Appeal No. 10-14-EQB.

a.   **West Virginia Has An Approved State NPDES Program With Primary Enforcement Responsibility And Authority**

The Stay Order was entered as part of a federally approved *state program* which oversees the NPDES program in West Virginia.   *See* 47 Fed. Reg. 22,363 (May 24, 1982) (approving West Virginia's NPDES program).   Initially, the Environmental Protection Agency ("EPA") possessed the authority to issue NPDES permits. *See* 33 U.S.C. § 1342(a)(1).   However, the CWA also authorized any state "desiring to administer its own permit program for discharges into navigable waters within its jurisdiction" to apply to EPA for such authority. *See* 33 U.S.C. § 1342(b); 40 C.F.R. § 123.21 to 123.30.   Once the EPA approves a state's NPDES program, the EPA surrenders its authority to issue NPDES permits subject to the state program.   33 U.S.C. § 1342(c)(1).   The state program is subject to limited federal oversight.[5]

On May 10, 1982, the EPA approved West Virginia's NPDES program administered by the WVDEP..   47 Fed. Reg. 22363 (May 24, 1982). *See* West Virginia Water Pollution Control Act, W. Va. Code §§ 22-11-1 through 29.   Pursuant to a Memorandum of Agreement ("MOA") between the WVDEP and the EPA Regional Administrator, the West Virginia program has primary enforcement responsibility of the NPDES program.   *See*

---

[5] *See* 33 U.S.C. § 1342; *Nat'l Ass'n of Home Builders v. Defenders of Wildlife* , 551 U.S. 644, 650 (2007); *EPA v. California ex rel. State Water Resources Control Bd.*, 426 U.S. 200, n. 39 (stating that Congress emphasized that only one government shall operate an NPDES program within a state and the legislative history of 33 U.S.C. § 1342(c) reflected a concern that the States be given maximum responsibility for the permit system and that the EPA's review authority be restricted as much as was consistent with its overall responsibility for assuring attainment of national goals.); *Save the Bay, Inc. v. Adm'r of the EPA*, 556 F.2d 1282, 1294 (5th Cir. 1977); West *Virginia Highlands Conservancy, Inc. v. Huffman*, 588 F.Supp.2d 678, 681 (N.D. W. Va. 2009); *Chesapeake Bay Found., Inc. v. Virginia State Water Control Bd.*, 495 F. Supp. 1229, 1232 (E.D. Va. 1980) (explaining that EPA retains a review function and an oversight function.   States must submit NPDES permit applications to the [EPA] Administrator for his review, and the Administrator may object to the issuance of a permit.   EPA's oversight function refers to its continued supervision of a state program to insure compliance with the CWA's requirements. If a state program proves to be inadequate or poorly administered, etc., the EPA may withdraw its earlier certification. 33 U.S.C. § 1342(c)(2)).

*Memorandum of Agreement Between the Division of Water Resources of the Department of Natural Resources of the State of West Virginia and the Regional Administrator, Region III, U.S. Environmental Protection Agency, Regarding the Administration and Enforcement of the National Pollutant Discharge Elimination System (NPDES)*, July 2, 1981, p. 2.  The State must administer the program consistent with the "MOA, the CWA, applicable federal regulations, promulgated effluent guidelines and State law and regulations issued pursuant thereto."  *Id*. at 2. According to the MOA, "[t]he Division of Water Resources *shall* become the *sole permit issuing authority* and the [EPA] Administrator *shall suspend the issuance of permits* upon approval of the State Program."  *Id*. at 8.

> **b.      The WV/NPDES Program Has Distinct Appeal Procedures Which Contemplate Issuing Stays.**

As part of the federally approved NPDES program, the State established an appeal process for NPDES permit approvals and various orders.   Appeals of permits were required to "be handled by the appropriate review boards so that federal conflict of interest requirements in review procedures would be respected."[6]   The appropriate review board for WV/NPDES permit decisions by the WVDEP is the Environmental Quality Board ("WVEQB"). *See* W. Va. Code § 22-11-21.   The judicial review procedures under the West Virginia Water Pollution Control Act authorize the WVEQB to issue stays during review of permit decisions. *See also* W. Va. Code § 22B-1-7(d).   The WVEQB, is also authorized to grant a stay or supersedeas pending the appeal of a *final* Board decision.   W. Va. Code § 29A-5-4(c).

---

[6] *See* Letter to Dr. Peter Bibko, Regional Administrator of EPA Region III, from Karen G. Watson, West Virginia Assistant Attorney General on September 28, 1981, p. 1; *also see Chesapeake Bay Found., Inc. v. Virginia State Water Control Bd.*, 495 F. Supp. 1229, 1237 (E.D. Va. 1980) ("It thus appears that Congress reserved unto the states the reviewability of state agency permitting decisions."); *Potter v. Asarco Incorp.*, 1999 WL 33537055, 5 (D. Neb. 1999) (stating that for the federal court to find jurisdiction to collaterally review the state permit would create a most improbable and awkward dichotomy of review concerning state-issued permits that would allow a federal court to second-guess the state's authority to issue NPDES permits, contrary to the provisions of the CWA).

Therefore, the appeal procedures also grant the WVEQB authority to stay enforcement of an agency order or decision pending an appeal of the Board's final decision to a circuit court.

Catenary followed the appropriate appellate procedures for the NPDES program to appeal a decision by the WVDEP regarding its NPDES permits.  Following these procedures, Catenary was granted a stay from its permit limits for selenium becoming final and effective. Accordingly, Catenary is not currently "in violation" of its permit limits for selenium.  Because there is no violation, Plaintiffs have failed to meet their burden of establishing the Court's subject matter jurisdiction under the CWA or SMCRA and the Plaintiffs' claims must be dismissed under Rule 12(b)(1).

> **2.    Plaintiffs' Claims Against Catenary Should Be Dismissed Under Rule 12(b)(6) Because Catenary Is Not "In Violation" Of Its Permit Limits For Selenium.**

This Court's analysis under Rule 12(b)(1) for a claim under Section 505 of the Clean Water Act and Section 520 of SMCRA is essentially the same as its analysis under Rule 12(b)(6).  *See United States v. GAF Corp.*, 389 F. Supp. 1379, 1381-83 & n.2 (S.D. Tex. 1975) (finding motion to dismiss under Rule 12(b)(1) and 12(b)(6) grounds "merged" because "the inability of the [EPA] Administrator to find a violation under the [CWA Section 301(a)] has two consequences: (a) the claim presented is invalid, and (b) there is no subject matter jurisdiction."). For the same reasons that the Plaintiffs' Complaint must be dismissed under Rule 12(b)(1), the Plaintiffs Complaint must be dismissed under Rule 12(b)(6) as the Plaintiffs have failed to state a claim upon which relief can be granted.

> **3.    Plaintiffs' claims implicate West Virginia State agency action and are not yet ripe for adjudication.**

Given that final effluent limits have been stayed for the permits referenced in Plaintiffs' complaint, and Catenary's appeals to the EQB have not yet been ruled upon,

Plaintiffs' claims are not ripe for adjudication and will not ripen until the EQB issues a final order on Catenary's appeals. Although Plaintiffs do not address the state court stays and appeals pending before the EQB, their current suit posits an indirect challenge to the ongoing administrative proceedings.

The ripeness doctrine provides that only disputes involving an actual, present controversy are proper for adjudication in federal courts. In the administrative context, the ripeness doctrine requires that the relevant administrative agency reach a decision that actually affects the plaintiff before a court will adjudicate a challenge to the agency's action. *See Abbot Labs v. Gardner,* 387 U.S. 136 (1967). The ripeness requirement is designed "to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* at 148-149. In deciding whether an agency's decision is, or is not, ripe for judicial review, the Court has examined both the "fitness of the issues for judicial decision" and the "hardship to the parties of withholding court consideration." *Id.* at 149; *see also Arch Mineral Corp. v. Babbitt,* 104 F.3d 660, 665 (4th Cir.1997).

With regard to the first prong, an issue is fit for judicial review if the agency ruling is final. *Traficanti v. United States,* 227 F. 3d 170, 176, n. 2 (4th Cir. 2000). In the present case, there is obviously no final agency ruling. Judicial interference at this stage would, therefore, inappropriately interfere with the EQB proceedings. In order to rule on Plaintiffs' claims, this Court must disregard the stays and effectively nullify Catenary's EQB appeals by deciding whether or not final effluent limits for selenium are applicable to Catenary before the EQB has the opportunity to hear Catenary's appeals. Such pre-mature interference in agency proceedings is precisely what the ripeness doctrine was formulated to avoid.

As to the second element of the ripeness inquiry, delaying review of Plaintiffs' claims until after the EQB rules on Catenary's appeals will not cause hardship to the Plaintiffs. At present, Plaintiffs are not subject to any harm as a result of the stay and the administrative appeals. Currently, however, the Plaintiffs are requesting that this Court adjudicate its claims on a hypothetical state of facts: that Catenary's final limits are in effect, and that Catenary is in violation of those limits. This is simply not the case, as the EQB orders have stayed the effect of final selenium limits pending the appeals. *See e.g., Texas v. United States*, 523 U.S. 296, 300 (1998) (holding that such claims are "not ripe for adjudication [because they] rest upon contingent future events that may not occur as anticipated, or indeed may not occur at all."). Because Plaintiffs' claims are not ripe, this Court should dismiss the action

## C.   Plaintiffs' Citizen Suit Against Catenary Is Precluded By DEP's Own Diligent Prosecution.

On April 23, 2010, DEP filed a civil enforcement action against Catenary in the Circuit Court of Boone County for alleged violations related to discharges under NPDES Permits WV0096920 and WV0093751. DEP amended its complaint on June 11, 2010 to include NPDES Permits WV0096962 and WV1014684. *See* First Amended Complaint, Civil Action 10-C-96 (attached as Exhibit 7).

Under 33 U.S.C. § 1365(b)(1)(B), a citizen cannot bring a private action to enjoin violations of the CWA "if the [EPA] or State has commenced and is diligently prosecuting a civil or criminal action in a Court of the United States, or a State to require compliance with the standard, limitation, or order." In *Gwaltney of Smithfield v. Chesapeake Bay Foundation*, 484 U.S. 49 (1987), the Supreme Court stated "[s]ince the great volume of enforcement actions [are intended to] be brought by the State," citizen suits are proper only if "the Federal, State, and local agencies fail to exercise their enforcement responsibility." Id. at 60. The Plaintiffs bear the

14

burden of proving that DEP's prosecution is not diligent. *Community of Cambridge Environmental Health and Community Development Group v. City of Cambridge*, 115 F.Supp.2d 550, 554 (D.Md. 2000). The burden is a heavy one, because diligence on the part of the enforcement agency is presumed. *See Friends of the Earth, v. Laidlaw Environmental Services (TOC), Inc.*, 890 F.Supp. 470 (D.S.C. 1995).

"[I]n determining whether the state [is] 'diligently prosecuting' a prior pending action against the defendant, the court may rely primarily on objective evidence from the court files with respect to the status of the state's suit at the time that the citizens' suit was commenced and the prospects that the state suit would proceed expeditiously to a final resolution. The court must presume the diligence of the state's prosecution of a defendant absent persuasive evidence that the state has engaged in a pattern of conduct in its prosecution of the defendant that could be considered dilatory, collusive or otherwise in bad faith." *Connecticut Fund For Environment v. Contract Plating Co., Inc.*, 631 F.Supp. 1291, 1293 (D.Conn. 1986). Plaintiffs may not be totally satisfied with the manner in which the State handles its enforcement action, but they are not entitled to a "personalized" remedy. *See Clean Air Council v. Sunoco, Inc.,* 56 Env't. Rep. 1775 (D.Del. 2003) (test of diligent prosecution is whether government prosecution is "totally unsatisfactory" not whether plaintiff would have preferred an alternate remedy); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d. 461 (6th. Cir. 2004)(citizen's suit proper when EPA has failed to act, not when EPA has failed to act aggressively enough in citizen's view).

In examining the objective evidence from the Boone County court files regarding the status of DEP's enforcement action, it is impossible to conjure any proof that the State's suit will not proceed expeditiously to a final resolution: Permits WV0096962 and WV1014684 were only added to the suit approximately two months ago. Furthermore, at this early stage in the

proceedings, Plaintiffs cannot point to any evidence of dilatory or collusive conduct. Instead, Plaintiffs attempt to show DEP's enforcement action is not a diligent prosecution by arguing that the language of the complaint does not seek to require compliance. Complaint, ¶57. Plaintiffs' only support for these allegatios is language from DEP's Amended Complaint is which DEP requests the establishment of a compliance schedule. *Id.*

Plaintiffs cite DEP's First Amended Complaint entirely out of context in an effort to make it appear as though DEP's only goal is to extend Catenary's compliance deadline. The section of the complaint that directly precedes the portion Plaintiffs cite, however, requests that Catenary "be enjoined from any and all future violations" of the WPCA and WVSCMRA, and also that Catenary be required to comply with conditions of its NPDES Permits. First Amended Complaint, p. 9. DEP also seeks civil penalties as part of its enforcement action. *See* First Amended Complaint, ¶ 1. *See,* Exhibit 7.

A plain reading of the First Amended Complaint as whole makes clear that DEP's enforcement action is calculated to achieve compliance. The fact that DEP may choose to pursue a compliance schedule as the mechanism for doing so relative to Permits WV0096962 and WV1014684 is not evidence of non-diligence. This Court has approved schedules of compliance and pilot projects as part of *OVEC v. Apogee* 3:07-cv-00413 and *Hobet I.* DEP's recognition that no party may simply waive a magic wand and achieve compliance overnight is not an indictment of its prosecutorial strategy; rather, it is simply an acknowledgement of reality.

Ultimately, DEP's enforcement action seeks to enjoin future violations and requests civil penalties for any such future violations. At this early stage in the litigation, it is simply impossible for the enforcement action to have produced any results with which Plaintiffs could be dissatisfied. If Plaintiffs do not believe DEP can effectively prosecute the enforcement

action and/or that the Boone County Circuit Court is incapable of fashioning an appropriate remedy, they are free to intervene in the State Court action pursuant to W.V. R. Civ. Proc. 24(a). In finding a citizen suit precluded by the CWA's diligent prosecution bar, the Court in *Connecticut Fund* found it significant that the plaintiffs could have intervened in the parallel state court action. *Connecticut Fund*, 631 F. Supp. at 1294. "[T]he 'diligent prosecution' rule does not preclude the plaintiffs from participating in suits to enforce NPDES permits but merely prevents them from forcing defendants simultaneously to litigate such suits in two different courtrooms." *Id.*

Furthermore, Plaintiffs are always free to file a citizen suit at the conclusion of DEP's enforcement action if DEP is unable to compel compliance. *Connecticut Fund*, 631 F. Supp. at 1294 ("there is nothing in the 'diligent prosecution' rule that would bar a future citizens' suit if the state suit failed to bring defendant into compliance with its NPDES permit."). Plaintiffs' action is tantamount to displacing DEP in its primary role or the enforcement of the Water Pollution Control Act. The Court should do nothing to impair the agancey in its enforcement duties. Allowing Plaintiffs' suit to proceed without giving DEP a realistic opportunity to discharge its duty effectively negates the CWA's diligent prosecution bar. Given that DEP's enforcement action relating to Permits WV0096962 and WV1014684 is only two months old, this Court should presume diligence on DEP's part. As a result, Plaintiffs' current claims against Catenary are precluded by the State's enforcement action.

**D.    The Action Must Be Dismissed Because the WVDEP Is an Indispensible Party.**

The Hobet and Catenary permits challenged by Plaintiffs are the subject of two proceedings brought by DEP in Boone County. The DEP is a "necessary part[y] to this action because permitting this suit to continue in both the state and federal courts would likely subject

all of the parties to conflicting legal obligations in a manner prohibited by Rule 19(a)(2)(ii) [now 19(a) (1) (b) (ii)]." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999). DEP is also an indispensable party within the meaning of the rule. *National Union Fire Insurance Company v. Rite Aid*, 210 F.3d 246, 249 (4th Cir. 2000). Because DEP cannot be joined, this case must be dismissed.

       1.     **DEP Cannot Be Made a Party to the Present Proceeding**

This Court analyzed extensively the application of Fed. R. Civ. P. 19 to the facts presented in *Hobet II* (Doc. 49, pp. 35-44).  It first found that the WVDEP could not be joined. "The WVDEP cannot be joined in this action because citizen suits under the CWA and SMCRA are permitted only to the extent allowed by the Eleventh Amendment, *see* 33 U.S.C. § 1365(a)(1)(ii); 30 U.S.C. § 1270(a)(1) & (2), and the WVDEP is immune to such suits as an arm of the State. *See, e.g., Virginia v. Reinhard*, 568 F.3d 110 (4th Cir. 2009); *Bragg*, 248 F.3d 275; *Westinghouse Elec. Corp. v. W.V. Dep't of Highways*, 845 F.2d 468 (4th Cir. 1988)." *Hobet II*, (Doc. 49. p. 35).

Nevertheless, because the Court found the WVDEP to be neither necessary nor indispensable within the meaning of Rule 19(a), it refused to dismiss the case as authorized by Fed. R. Civ. P. 12(b)(7).  Unlike *Hobet II*, but consistent with the Court's analysis in that case, the facts in the present case demonstrate that WVDEP is necessary and indispensable.  Because it cannot be joined, the action must be dismissed.

       2.     **DEP Is a Necessary Party within the Meaning of Rule 19(a)**

The Court began its analysis in *Hobet II* by reviewing the two-part test under Rule 19(a)(1)(B).

> First, the Court decides whether the nonjoined party "claims an interest related to the subject of the action," *see* Fed.R.Civ.Pro.19(a)(1)(B), and, if so, the Court considers

whether the absence of the non-joined party will either: (1) impede or impair that party's interest, *see* Fed.R.Civ.Pro.19(a)(1)(B)(i), or (2) leave an existing party subject to conflicting obligations. *See* Fed.R.Civ.Pro. 19(a)(1)(B)(ii). If the first and either of the second parts of the test are satisfied, then the non-joined party is "necessary." *See, e.g., Nat'l Union*, 210 F.3d at 250-52 (finding non-joined party necessary); *Owens-Illinois*, 186 F.3d at 441 (same).

*Hobet II*, (Doc. 49, p. 37).

The Court found that the WVDEP indeed had an interest implicated by the citizen suit in *Hobet II*, as required by Rule 19(a)(1)(B). "Specifically, the WVDEP asserted its role as the primary enforcer of the CWA and SMCRA." *Hobet II*, (Doc. 49, p.38). The Court then turned to the two tests expressed under Rule 19(a)(1)(B)(i) and (ii).  The Court found that the WVDEP's interest would not be impaired but reached that conclusion because it deemed the state's prosecution in *Hobet II* not deemed diligent.  As explained above, that same conclusion cannot result in the present case.

As to Catenary, the state's action is still in its infancy.  As to Hobet, the effect of the *Hobet I* settlement and consent order in the Boone County circuit court is still being executed. Since the same Hobet permits at issue in the present case are the subject of that order, no logical argument can be made that exercising jurisdiction over the permits in this case cannot affect the WVDEP's interest in those same permits which remain the subject of the prior proceeding.

In determining whether the WVDEP is necessary Rule 19(a)(1)(B)(ii) applies in the second instance to persons already parties to the action. The Court acknowledged that "[t]his question is somewhat more difficult. . . because Hobet may be subject to injunctive relief imposed by two courts." *Hobet II*, (Doc. 49, pp. 39-40).  It nevertheless resolved the issue by concluding that the WVDEP was not necessary because any "relief [entered by the Court] will not be inconsistent with the terms of the modified consent order in the Boone County Circuit

Court". *Hobet II,* (Doc. 49, p.40).  The facts of the present case do not allow the Court to reach the same conclusion a second time.

Hobet and Catenary clearly are "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."   Plaintiffs have pleaded claims and seek relief against Hobet that is directly at odds with the existing settlement and consent order in the state court.  Allowing the Plaintiffs to maintain their action in the absence of the WVDEP demonstrably places Hobet at the very risk that Rule 19 is designed to avoid. Because the interests of both DEP and Hobet are implicated by the claims and relief sought by the Plaintiffs in the present suit, each satisfies the criteria of Rule 19 and protection that rule affords.

With respect to Catenary, the state court has yet to rule on the motion to join the citizen plaintiffs pending before it.  Because both this case and the state case have recently commenced, there is no opportunity for this Court to determine if any relief it might grant will conflict with any decision of the state court.  Therefore, the careful tailoring that the Court undertook in *Hobet II* is not possible as to Catenary.  Accordingly, under Rule 19(a)(1)(B)(ii) and the court's prior reasoning the WVDEP is a necessary party in the present action.

### 3.    WVDEP Is an Indispensable Party within the Meaning of Rule 19(b).

"If the court determines that the party is 'necessary,' it must then determine whether the party is 'indispensable' to the action under Rule 19(b)." *National Union Fire Insurance Company v. Rite Aid*, 210 F.3d 246, 249 (4th Cir. 2000). Indispensability is determined under the four criteria of the rule, *after* it is determined that the absent person cannot be joined.  Although questions of joinder and indispensability have usually arisen in circumstances of diversity jurisdiction, *e.g., National Union Fire Insurance Company v. Rite*

*Aid*, 210 F.3d 246, *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, nonjoinder can arise for any reason.  Although having found WVDEP not to be a necessary party, the Court reviewed the four factors of indispensability out of "an abundance of caution." (Doc., p. 40).  Its conclusion that WVDEP was not indispensable in *Hobet II* can not be reconciled with the facts of the present case.

Beginning with the first factor, the Fourth Circuit has acknowledged that the analysis used under Rule 19(b)(1) is largely the analysis under Rule 19(a)(2): "The extent a judgment rendered in the non-party's absence will prejudice that person or those already parties." *National Union Fire Insurance Company v. Rite Aid*, 210 F.3d 246, 252.  For reasons already explained to demonstrate WVDEP's status as a necessary party, prejudice both to the WVDEP, as well as Catenary and Hobet, is unquestionable.  Maintaining this action in the absence of the WVDEP effectively undermines the agency's statutory authority in its civil action against Catenary, and ignores the validity of the existing state court decree.  Thus, the court cannot act to avoid prejudice to the state and the coal companies it found possible in *Hobet II.*

The second factor under Rule 19(b)(2)—"whether a court can tailor relief to lessen or avoid the prejudice to the absent person or to those already parties"—is unavailing to Plaintiffs.  *Id.* at 253.  They seek a declaration and injunction from this Court on claims already resolved or currently being resolved by the Circuit Court of Boone County.  The trial needed to ascertain facts that the Court found necessary in *Hobet II* has been concluded. Catenary and Hobet cannot fathom how the Court will be able to tailor the relief sought by Plaintiffs to lessen or avoid prejudice to Catenary and Hobet.

The third factor under Rule 19(b)(3) addresses the adequacy of the relief in the other forum, as well as "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).  As the Fourth Circuit observed in *National Union Fire Insurance Company,* all of the parties to the present case are proper parties to the state court action. 210 F.3d at 253.  The Court acknowledged in its July 12 memorandum opinion in *Hobet II* the potential for inefficiency to the company from the maintenance of two actions. It nevertheless found WVDEP was not indispensable because the "August 9, 2010 trial is not only necessary to the proper resolution of the claims pending here, but may also promote the public interest in the complete and efficient settlement of both cases."  *Hobet II* (Doc. 49 pp. 43-44). The trial has been concluded and its benefits to the Court and the public achieved.  There can be no further doubt as to the indispensability of the WVDEP in this action.

The fourth and final factor under Rule 19(b)(4) requires the Court to examine whether dismissal for nonjoinder will leave the plaintiff with an adequate remedy. As in *National Union* there is no reason why "state court will not provide an adequate remedy for the parties in this case." 210 F.3d at 253.  The Plaintiffs have a clear right of intervention in the pending state proceeding. *State ex rel Ball v. Cummings,* 208 W.Va. 393 (1999).  They currently oppose joinder in the Cantenary civil action. *See* Exhibit 6.  The Court has already indicated that the settlement and consent order in the Boone County Circuit Court presents such a remedy. "Although this Court has criticized the WVDEP for prior lack of diligence, the agency employs environmental experts and engineers far better suited to understand the problem than this Court. The Court would not substitute its own plan for compliance in place of WVDEP's without evidence that the agency's plan was ill-conceived or developed in bad faith." *Ohio Valley*

*Environmental Coalition v. Hobet Mining, LLC,* 2008 WL 5377799, at 7 (December 18, 2008). This new action invites the Court to repudiate its prior decision in the *Hobet I* case which validated WVDEP's decision to enter its settlement.

Finally, dismissal of an action for nonjoinder of an indispensable party raised in a Rule 12(b)(7) motion is proper. *Northern Arapaho Tribe v. Harnsberger*, 660 F.Supp.2d 1264 (D. Wyo, October 9, 2009).

## IV. CONCLUSION

Because Plaintiffs cannot meet their burden to establish that WVDEP's current enforcement actions against Hobet and Catenary are not diligent prosecutions, this court does not possess subject matter jurisdiction.   For this reason Plaintiffs' Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1).  Furthermore, because Plaintiffs have failed to identify violations that have occurred under Catenary's NPDES Permits and because the case is not ripe for objective decision, their Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Finally because WVDEP is an indispensable party who cannot be joined this Court should dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(7) .

Respectfully submitted,

CATENARY COAL COMPANY, LLC and
HOBET MINING, LLC
By Counsel

/s/*Blair M. Gardner*
BLAIR M. GARDNER, WVBN 8807
THOMAS J. HURNEY, JR., WVBN 1833
CHRISTOPHER M. HUNTER, WVBN 9768
JACKSON KELLY, PLLC
1600 Laidley Tower
Post Office Box 553
Charleston, West Virginia 25322
*Counsel for Hobet Mining, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

**OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
COAL RIVER MOUNTAIN WATCH,
INC., and SIERRA CLUB,**

**Plaintiffs,**

**v.**                                                                  **CIVIL ACTION NO. 3:10-cv-00847**

**CATENARY COAL COMPANY, LLC,
and HOBET MINING, LLC,**

**Defendants.**

### CERTIFICATE OF SERVICE

I, Blair M. Gardner, hereby certify that the foregoing ***Defendant's Motion to Dismiss*** has

been served electronically through the CM/ECF system this 16th of August, 2010, upon the

following:

>Derek O. Teaney, Esq.
>Joseph M. Lovett, Esq.
>Appalachian Center for the Economy
>& the Environment
>P.O. Box 507
>Lewisburg, WV 24901

>*/s/ Blair M. Gardner*
>BLAIR M. GARDNER